# EXHIBIT 1

## IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

| | |
|---|---|
| Green Biologics, Inc. | : |
| 1130 Gahanna Parkway | : |
| Columbus, Ohio 43230, | : |
| | : |
| Plaintiff, | :   Case No.: |
| | : |
| -vs- | :   Judge: |
| | : |
| Easy Energy Systems, Inc. | : |
| 102 Mill Street | : |
| Welcome, Minnesota 56181, | : |
| | : |
| Defendant. | : |

Plaintiff Green Biologics, Inc. files this Complaint against Defendant Easy Energy Systems,

Inc. and alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Green Biologics, Inc. ("Plaintiff" or "GBI") is a Delaware corporation doing

business in Franklin County, Ohio.

2.      Easy Energy Systems, Inc. ("Defendant" or "EES"), is a Minnesota corporation with

its principal place of business in Welcome, Minnesota.

3.      Jurisdiction and venue are proper in this Court pursuant to the forum selection

clause described below.

### FACTS COMMON TO ALL CLAIMS

4.      On or about November 21, 2013, EES executed and delivered to GBI a Promissory

Note for the principal amount of $150,000.00 (the "Note").  A true and correct copy of the Note

is attached hereto as *Exhibit A*.

1

5.      Paragraph 17 of the Note contains a forum selection clause whereby EES consented to jurisdiction and venue in the Franklin County Court of Common Pleas.

6.      Also on about November 21, 2013 and in order to secure the Note, EES executed and delivered to GBI a Security Agreement (the "Security Agreement") granting GBI a security interest in a certain cooling tower, gas heater and evaporator module located at the Premises and at 102 Mill Street, Welcome, Minnesota 56181 (the "Initial Collateral"). A true and correct copy of the Security Agreement is attached hereto as *Exhibit B*.

7.      GBI properly perfected its security interest in the Initial Collateral by filing a UCC Financing Statement with the Minnesota Secretary of State on or about January 14, 2014 (Filing Number 201435191963). A true and correct copy of the UCC Financing Statement is attached hereto as *Exhibit C*.

8.      On or about January 29, 2014, EES executed and delivered to GBI an Allonge to Promissory Note thereby increasing the principal amount to $900,000.00 (the "First Allonge"), inclusive of all amounts advanced by GBI pursuant to the Note. A true and correct copy of the First Allonge is attached hereto as *Exhibit D*.

9.      Subsequently, to further secure the credit amount granted by the First Allonge, GBI amended the UCC Financing Statement on or about June 27, 2014 (the "Amended UCC") to include the following hard equipment and infrastructure as additional collateral: fermenters (3); beer well; in situ tank; glycol heater (8MM Btu/hr capacity) installed; cooling tower; chiller installed; air compressor; grain bins and augers and conveyors; co-product conveying and collection; CIP system; evaporator or alternative concentrator installed; hammer mill installed; scale or cover; cablevy system; control panels and electrical for MEPS added in 2014; pipes and

2

plumbing added in 2014; any other assets required to run the process; and, rights to the following services – city water, natural gas, electrical and waste water system (the "Additional Collateral" and hereinafter collectively with the Initial Collateral, known as the "Collateral"). A true and correct copy of the Amended UCC is attached hereto as *Exhibit E.*

10.    On or about November 1, 2014, EES executed and delivered to GBI a *Second Allonge to Promissory Note* (the "Second Allonge") thereby modifying the payment terms of the Note and First Allonge. A true and correct copy of the Second Allonge is attached hereto as *Exhibit F.*

11.    EES is in default under the terms of the Note, First Allonge and Second Allonge (collectively, the "Loan") for failure to make payments in accordance with the terms of the Loan.

12.    As a result of EES' default under the Loan, GBI is permitted under Section 9 of the Note to accelerate the payment in full of the principal, interest, and all other amounts payable under the Loan.

13.    On about January 19, 2017, GBI issued a *Notice of Default and Acceleration* to EES demanding payment of all principal balances, plus unpaid interest and other charges then due on the Loan (the "Notice"). A true and correct copy of the Notice is attached hereto as *Exhibit G.*

14.    EES has failed to pay the amounts owed to GBI on account of the Loan.

15.    In accordance with the terms of the Loan, GBI is entitled to recover all out-of-pocket expenses, including attorneys' fees and costs incurred, to collect any amounts due under the Loan, not to exceed ten percent (10%) of the principal sum of the Loan. *(See, Exhibit A, para. 10).*

3

0E287 - S5 Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

16.    There is currently due and owing to GBI on account of the Loan the principal amount of $853,000.00; plus, accrued interest in the amount of $22,809.00; plus, additional interest accruing at the default rate of fourteen percent (14%), compounded quarterly, from October 1, 2017, through the date of collection; plus costs and reasonable attorneys' fees, not to exceed 10% of the principal sum due and owing under the Loan.

### FIRST CLAIM FOR RELIEF
### (Breach of Loan)

17.    GBI hereby adopts the preceding paragraphs and incorporated them by reference as if fully restated herein.

18.    EES is in default under the terms of the Loan for failure to make payments when due.

19.    The Loan is in default for all payments due from June 1, 2017 to the present.

20.    The balance due on the Loan is the principal amount of $853,000.00; plus, accrued interest in the amount of $22,809.00; plus, additional interest accruing at the default rate of fourteen percent (14%), compounded quarterly, from October 1, 2017, through the date of collection; plus costs and reasonable attorneys' fees, not to exceed 10% of the principal sum due and owing under the Loan.

21.    GBI is the holder of and is in possession of the Loan and has elected to declare the entire amount due under the Loan to be immediately due and payable.

22.    GBI is entitled to judgment against EES in the principal amount of $853,000.00; plus, accrued interest in the amount of $22,809.00; plus, additional interest accruing at the default rate of fourteen percent (14%), compounded quarterly, from October 1, 2017, through

4

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046
0E287 - S6

the date of collection; plus costs and reasonable attorneys' fees, not to exceed 10% of the principal sum due and owing under the Loan.

### SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

23.     GBI hereby adopts the preceding paragraphs and incorporated them by reference as if fully restated herein.

24.     GBI conferred a benefit upon EES by financing EES's acquisition of the Collateral.

25.     EES is aware of the benefit conferred upon it by GBI.

26.     EES has been unjustly enriched by accepting and using the Collateral without repayment to GBI.

27.     GBI is entitled to judgment against EES in the principal amount of $853,000.00; plus, accrued interest in the amount of $22,809.00; plus, additional interest accruing at the default rate of fourteen percent (14%), compounded quarterly, from October 1, 2017, through the date of collection; plus costs and reasonable attorneys' fees, not to exceed 10% of the principal sum due and owing under the Loan.

### THIRD CLAIM FOR RELIEF
### (Enforcement of Security Agreement)

28.     GBI hereby adopts the preceding paragraphs and incorporated them by reference as if fully restated herein.

29.     EES granted GBI a security interest in the Collateral by executing the Security Agreement.

30.     GBI has a security interest in the Collateral.

31.     GBI perfected its security interest in the Collateral by filing the UCC Financing

5

Statement and Amended UCC (collectively, the "Lien") with the Minnesota Secretary of State as set forth above.

32.    Due to EES's default under the Loan, GBI is entitled to possession of the Collateral.

33.    The value of the Collateral is currently unknown.

34.    EES has not delivered control of the Collateral to GBI.

35.    Pursuant to the security interest granted in the Security Agreement and the Lien, GBI is entitled to possession of the Collateral prior to final judgment in this matter.

## RELIEF REQUESTED

Wherefore, Plaintiff Green Biologics, Inc. requests this court grant judgment against Defendant Easy Energy Systems, Inc. as follows:

(a)    judgment in the principal amount of $853,000.00; plus, accrued interest in the amount of $22,809.00; plus, additional interest accruing at the default rate of fourteen percent (14%), compounded quarterly, from October 1, 2017, through the date of collection; and,

(b)    judgment for court costs and reasonable attorneys' fees, not to exceed 10% of the principal sum due and owing under the Loan; and,

(c)    judgment granting Plaintiff possession of the Collateral and further permitting Plaintiff to sell the Collateral and apply of the proceeds of the sale of the Collateral to the debt owed to Plaintiff; and,

(d)    for such other and further relief to which Plaintiff has demonstrated just entitlement.

6

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046
0E287 - S8

Respectfully submitted,

Christy A. Prince      (0082220)
Victoria E. Beckman    (0091896)
KEGLER, BROWN, HILL & RITTER CO., LPA
65 East State Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 462-5400
Fax:    (614) 464-2634
cprince@keglerbrown.com
*Counsel for Plaintiff Green Biologics, Inc.*

107712\000001\4852-2668-5549v2

0E287 - S9  Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

NOV-21-2013  15:32        312 528 4000                                    P.003

**EXHIBIT A**

## Promissory Note

$150,000.00                                      11/21/13 , 2013("Effective Date")

FOR VALUE RECEIVED, in accordance with that certain Facilities Usage Agreement by and between the parties hereof and last executed on the March 14, 2013 (the "Facilities Usage Agreement"), the undersigned, Easy Energy Systems, Inc., a Minnesota corporation, having its principal place of business at 102 Mill Street, Welcome, Minnesota 56181 (the "Maker"), hereby promises to pay to the order of Green Biologics, Inc., a Delaware corporation having its principal place of business at 1130 Gehanna Parkway, Columbus, Ohio 43230 (the "Holder"), at such other address as the Holder may from time to time designate to the Maker in writing, the maximum principal sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) (the "Credit Commitment") or such lesser portion thereof as may from time to time be disbursed to, or for the benefit of the Maker, and remains unpaid, with interest on the balance from time to time remaining unpaid. The unpaid principal amount of this Note from time to time outstanding shall bear interest at the rate of eight percent (8%) per annum, compounding quarterly ("Interest"). Interest shall be computed based on the actual number of days elapsed. Payments of principal and interest are to be made in lawful money of the United States of America in immediately available funds.

1.      Maturity. All amounts due and owing hereunder are due and payable on or before March 14, 2018 ("Maturity Date").

2.      Draw of Funds. During the period of time between the Effective Date and May 30, 2014 (the "Draw Period", Maker may request, from time to time, that Holder provide any or all of the Credit Commitment to Maker (such request being a "Draw Request," and such portion being requested is hereinafter a "Draw Tranche"). The date on which any particular Draw Tranche is provided to Maker pursuant to a Draw Request (each a "Draw Effective Date") shall be used for purposes of calculating interest and payments required hereunder for the applicable Draw Tranche.

(a)   .   Maker may make a Draw Request to Holder at any time during the Draw Period by sending such Draw Request to Holder, for Holder's review and approval, in the form provided in Exhibit A attached hereto. An executed Draw Request form shall be delivered to Holder either personally or via email (in .pdf format) to the addresses provided by Holder for such notice, or such other address as may have been designated by the Holder following the date hereof. Holder may review and approve each Draw Request in its sole discretion.

(b)   Upon transfer of any Draw Tranche, Holder may provide Maker a schedule of the Draw Tranches received to date ("Schedule of Draw Tranches"), in the form indicated in Exhibit B attached hereto, evidencing the initial balance and Draw Effective Date of each outstanding Draw Tranche. Such Schedule of Draw Tranches shall amend and replace the then-existing Exhibit B, and Holder may affix such Schedule of Draw Tranches to this Note as evidence of the obligations hereunder.

3.      Limitations on Credit Commitment. The total Credit Commitment shall be reduced, on a dollar for dollar basis, by the amount of any grant or similar funding received or receivable by Maker in respect of or relating to the Equipment (as defined in Section 12). The total aggregate amount of all Draw Tranches shall not exceed the total, then applicable Credit Commitment, and no amounts may be re-borrowed by Maker following the repayment of all or a portion of principal in respect of any Draw Tranche.

4.      Repayment. The principal sum of this Note and all accrued and unpaid interest shall be payable as follows: interest on each Draw Tranche shall be payable quarterly, in arrears, commencing on the first day of the quarter following the Draw Effective Date, and continuing on first day of each consecutive quarter thereafter, installments of principal and interest, amortized equally over the remaining time before the Maturity Date, shall be made by Maker to Holder, with all remaining principal and interest on such Draw Tranche being due and payable, in full, on or before the Maturity Date. In lieu of its right to receive all or a portion of each quarterly payment, Holder (if a party to the Facilities Usage Agreement) may notify Maker ("Offset Notice") of its intent to exercise its rights under the Facilities Usage Agreement to offset such payments up to the applicable Offset Percentage (as defined below) of accrued Facilities Usage Fees against the outstanding principal and interest due to Holder under this Note (without regard to whether the entire balance offset is then due and payable), in such event, Maker's principal and interest obligations hereunder will be reduced, as if a cash payment had been made in the amount indicated in Holder's Offset Notice. For the avoidance of doubt, Holder's obligations to Maker for Facilities Usage Fees under the Facilities Usage Agreement shall be reduced dollar for dollar by the amount indicated in the Offset Notice as well.

"Offset Percentage" shall mean 50% of accrued Facilities Usage Fees; provided however that the Offset Percentage shall not exceed a percentage equal to (a) 100%, _minus_ (b) the percentage that is equal to (i) Maker's total variable cost for operating Maker's facility, _divided by_ (ii) the Facilities Usage Fees applicable during the measurement period. For the avoidance of doubt, if the Offset Percentage is less than the quarterly payment that is due and payable from Maker hereunder, the entire quarterly payment will still be due and payable notwithstanding the size of the Offset Percentage.

5.      Prepayment. The Maker may prepay this Note, in whole or in part, at any time and from time to time, without penalty or premium, upon at least ten (10) business days prior written notice to the Holder.

6.      Maker Representations and Warranties. To induce the Holder to enter into this Note, the Maker represents and warrants that:

(a)      Borrowing Authorization. The execution by Maker and the delivery and performance of this Note has been duly authorized by appropriate corporate actions; the Note has been authorized by all necessary action and will not violate: (1) any provision of law; or (2) any agreement binding on Maker; the persons executing and delivering the Note are duly authorized by, for and on behalf of Maker and are under no disability or impairment.

(b)      Financial Statements. All financial statements furnished to the Holder by Maker or its representative ("Financial Statements") have been prepared in conformance with GAAP (or other method of accounting approved in advance by the Holder) and fairly present the financial condition, results of operations, and changes in financial position of Maker as of the dates and for the periods indicated in such Financial Statements, and, since the date of the most recent such Financial Statement, there has been no material adverse change in its financial condition.

(c)      Actions Pending. There are no claims, investigations or litigation pending or threatened against or affecting the Maker or its respective assets before any court or agency, or any contingent liabilities that are not set forth in the Financial Statements referred to in immediately preceding subsection.

(d)      Liens. None of the Equipment is subject to any mortgage, pledge, security interest, lien, or other encumbrance.

(e)      Environmental Matters. To the best of Maker's knowledge, all operations and property of the Maker are in compliance in all material respects with all federal, state, and local laws, statutes, rules, and regulations relating to air and water pollutants, hazardous waste disposal and other environmental laws. There is no judicial or administrative proceeding pending or threatened against or affecting Maker with respect to such environmental matters.

(f)      Compliance. Maker is in compliance in all material respects with all laws, statutes, rules, and regulations applicable to it. No default (or event which with notice or lapse of time, or both, would constitute a default) exists under any material agreement to which Maker are a party or by which Maker is bound or pursuant to which any assets of the Maker are encumbered.

(g)      Taxes. All taxes, assessments, and other liabilities which are due have been paid in full and in a timely manner, except for those taxes and assessments which the Maker is contesting in good faith and with respect to which the Maker has taken proper steps to perfect its appeal and which have not resulted in liens on the Maker's property which materially diminishes the value of the Maker's property.

(h)      Existence. Maker is duly organized and validly existing corporation organized under the laws of the State of Minnesota.

7.      Collateral. The obligations of the Maker to the Holder under this Note shall be secured, pursuant to the security agreement dated as of even date herewith between Maker and Holder (as may be amended from time to time, the "Security Agreement"), by a first and best security interest in the Equipment, whether now existing and hereafter arising or acquired by Maker, regardless of where it is located, and defined as follows (together with all proceeds and products thereof and all additions and accessions thereto, replacements thereof, supporting obligations therefor, software related thereto, guaranties thereof, insurance or condemnation proceeds thereof, documents related thereto, all sales of accounts constituting a right to payment therefrom, all tort or other claims against third parties arising out of damage thereto or destruction thereof, all property received wholly or partly in trade or exchange therefor, all fixtures attached or appurtenant thereto, all leases thereof, and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition thereof, or any other interest therein, collectively, the "Collateral").

OE287 - S11

8.    Events of Default.  Upon the occurrence of any of the following events (each an "Event of Default"), including any event which, with notice or the passage of time, or both, would become an Event of Default, the Holder may declare any or all of the Note due and immediately payable, without further notice or demand and the Holder shall have all rights to realize on the Collateral. An Event of Default shall include the following:

(a)    Any representation or warranty of Maker set forth in this Note shall be materially inaccurate or misleading; or

(b)    the sale or transfer of any Collateral by Maker, other than in the ordinary course of business, without the prior written consent of Holder.

9.    Remedies on Default.  Whenever any Event of Default hereunder shall have occurred, Holder shall have the following rights and remedies and all other rights and remedies available at law or in equity:

(a)    To declare any or all of the Note and all other obligations hereunder and under the Facilities Usage Agreement or the Security Agreement immediately due and payable, which shall include the principal balances then owing, plus all unpaid interest and other charges hereunder and thereunder until the same are paid in full;

(b)    To exercise all rights and remedies provided under the Facilities Usage Agreement and Note and to realize on the Collateral for the obligations of Maker to Holder;

(c)    To set off, appropriate, apply and enforce the liens and security interests granted by the Maker to the Holder; and

(d)    To charge interest (computed and adjusted in the same manner, and with the same effect, as interest prior to maturity) on the Note and any other obligations of Maker hereunder or under any of the other agreements, payable on demand, at a rate per annum equal to the highest rate otherwise borne by the Note plus six percent (6.00%), in all cases until paid and whether before or after the entry of any judgment thereon.

10.    Collection Expenses.  Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or other court proceedings, or should this Note be placed in the hands of attorneys for collection after default, the Maker agrees to pay, in addition to the principal and interest due and payable hereon, reasonable attorneys' and collection fees not to exceed ten percent (10%) of the principal sum of the Note.

11.    Presentment.  All persons now or hereafter liable for the payment of the principal or interest due on this Note, or any part thereof, whether as makers, endorsers, guarantors or otherwise, do hereby expressly waive presentment for payment, notice of dishonor, protest and notice of protest, and agree that the time for the payment or payments of any part of this Note may be extended, at any time and from time to time, without releasing or otherwise affecting their liability on this Note.

12.    Use of Proceeds.  Subject to the terms hereof and the terms of the Facilities Usage Agreement, Maker will use the proceeds of the Note solely and exclusively for the purchase by Maker of equipment approved in advance of such purchase in writing by Holder to meet its obligations set out in Schedule V of the Facilities Usage Agreement (the "Equipment"). A full list of the Equipment eligible for Draws hereunder is attached hereto as Exhibit C.

13.    Actions; Violation of Other Agreements. There are no actions, suits, or proceedings pending or, to the best of any of the Maker's knowledge, threatened, nor to the best of any of the Maker's knowledge is there any basis therefore, which might materially adversely affect the financial condition of Maker, or which might impair the value of any security taken or to be taken by Holder in connection with the Note. The Maker is not a party to, or subject to the terms of, any agreement, indenture, mortgage or other instrument that limits the rights of such party to enter into and perform its obligations under the Note, the Facilities Usage Agreement, or the Security Agreement.

14.    Notices.  Any notice required or permitted to be given under this Note shall be in writing and delivered by certified mail, postage prepaid, return receipt requested, to the other party at the applicable address stated in the first paragraph of the Note, or at such other address as may have been designated in writing by the other party.

15.    Waiver.  No delay on the part of the Holder in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Holder of any right or remedy shall preclude other or further

3

0E287 - S12

NOV-21-2013  15:33        312 528 4000                                    P.009

exercise thereof or the exercise of any other right or remedy; nor shall any modification or waiver of any of the provisions in this Note be binding upon the Holder, except as expressly set forth in a writing duly signed and delivered on behalf of the Holder.  No action of the Holder permitted under this Note shall in any way affect or impair the rights of the Holder and the obligations of the Maker (against whom the Holder specifically reserves all right of recourse) under this Note.

16.        Successors.  This Note shall be binding upon the Maker and its successors and assigns. The term "Holder," as used herein, shall mean the person or entity specifically identified as the Holder in the first paragraph of this Note or such other person or entity as shall take this Note by transfer and become entitled to receive payments under this Note, whether one or more. Notwithstanding the foregoing, this Note and the rights, interests and benefits hereunder, may not be sold, assigned, transferred, conveyed, pledged or otherwise hypothecated or disposed of by the Holder without the prior written consent of the Maker.

17.        Governing Law.  This Note shall be governed by and construed in accordance with the laws of the State of Ohio in all respects.  The Maker consents to jurisdiction in the courts of Ohio for any action to enforce this Note and specifically agrees that jurisdiction and venue shall be proper only in the Franklin County, Ohio, court of Common Pleas, and the United States District Court for the Southern District of Ohio sitting in Franklin County.

18.        Severability.  If any term or provision of this Note or the application thereof to any person, property, or circumstance shall to any extent be invalid or unenforceable, the remainder of this Note, or the application of such term or provision to persons, properties, and circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby. and each term and provision of this Note shall be valid and enforceable to the fullest extent permitted by law..

MAKER:

EASY ENERGY SYSTEMS, INC.

By: Mark Gaalswyk

Its: Chairman

4

OE287 - S13

NOV-21-2013  15:33          312 528 4000                              P.006

**EXHIBIT A**
**Draw Request**

**DRAW REQUEST**

Easy Energy Systems, Inc., requests a Draw Tranche of $ *150,000* from Green Biologics, Inc. ("Holder") for the Equipment further described in the itemized invoice and/or purchase order attached as Exhibit A-1. Following review and approval by Holder, the Draw Tranche shall be transferred as describe below:

| Wiring Instructions: _____ <br> _____ <br> _____ <br> Account Information: _____ | EASY ENERGY SYSTEMS, INC., <br> By: _____ <br> (Name—Printed)              (Title) <br> Date: *11/21/13* _____ |

Acknowledged and Agreed:

GREEN BIOLOGICS, INC.,
as Holder

By: _____

_____
(Name—Printed)                    (Title)

Date: _____

0E287 - S14

NOV-21-2013  15:32        312 528 4000                                    P.002

**EXHIBIT A-1**
**Draw Request Equipment Invoice and Description**
**[attached]**

Cooling Tower

Evaporator module

Gas Heater

8

OE287 - S15

NOV-21-2013  15:33          312 628 4000                    P.010

**EXHIBIT B**
**Schedule of Draw Tranches**

| Draw Tranche Number | Draw Tranche Amount | Draw Effective Date | Draw Tranche Termination Date (March 14, 2018) |
|---|---|---|---|
| 1. | $150,000 | 11/21/13 | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E287 - S16

NOV-21-2013  15:33          312 528 4000                                    P. 007

**EXHIBIT C**
**List of Eligible Equipment**

4851-4928-2479, v. 3

Cooling Tower

GAS Heater
Evaporator module

8

0E287 - S17    Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

NOV-21-2013  15:33        312 528 4000                                    P.008

**EXHIBIT B**

### Security Agreement
(New Equipment Loan)

This Security Agreement (New Equipment Loan) (this "Agreement") is made as of November 21, 2013 by and between Easy Energy Systems, Inc., a Minnesota corporation ("Debtor"), in favor of Green Bioiogics, Inc., a Delaware corporation, located at 1130 Gahanna Parkway, Columbus, Ohio 43230 (the "Secured Party"). Debtor and Secured Party hereby agree as follows:

WHEREAS Debtor is indebted to Secured Party pursuant to, among other things, the [Promissory Note] dated as of even date herewith from Debtor to Secured Party (as may be amended from time to time, the "Loan Agreement").

1.    OBLIGATIONS.  This assignment of collateral and grant of security interest shall secure the obligations as defined in the Loan Agreement.

2.    COLLATERAL.  Debtor hereby grants and re-grants to Secured Party a continuing security interest in all right, title and interest of Debtor in the following property, whether now existing and hereafter arising or acquired by Debtor, regardless of where it is located, and defined as follows (together with all proceeds and products thereof and all additions and accessions thereto, replacements thereof, supporting obligations therefor, software related thereto, guaranties thereof, insurance or condemnation proceeds thereof, documents related thereto, all sales of accounts constituting a right to payment therefrom, all tort or other claims against third parties arising out of damage thereto or destruction thereof, all property received wholly or partly in trade or exchange therefor, all fixtures attached or appurtenant thereto, all leases thereof, and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition thereof, or any other interest therein, collectively, the "Collateral"). The Collateral shall include all specified Equipment purchased by Debtor with proceeds of any Draw pursuant to the terms of the Loan Agreement:

3.    WARRANTIES AS TO DEBTOR.  Debtor hereby represents and warrants to Secured Party as follows:

(a)    It is a corporation duly organized, validly existing and in good standing under the laws of the State of Ohio.

(b)    Debtor further warrants that its exact legal name is set forth in the initial paragraph of this Agreement, that its taxpayer I.D. is 20-5449560, and that its organizational number is File Number 985555-2.

(c)    The Exhibit entitled "Collateral Locations" attached to this Agreement and incorporated herein by reference (as may be amended from time to time with the purchase of new equipment in accordance with the Loan Agreement), lists the location of any and all of the Collateral of Debtor.

4.    WARRANTIES AS TO THE COLLATERAL.  Debtor hereby represents and warrants to Secured Party that:

(a).    Except for the security interest hereby granted, Debtor is, and as to any property which at any time forms a part of the Collateral, shall be, the sole owner of, with good and marketable title in, each and every item of the Collateral, or otherwise shall have the full right and power to grant a security interest in the Collateral, free from any Lien, security interest or encumbrance whatsoever.

(b)    Each item of Collateral is, and shall be, valid, and all information furnished to Secured Party with regard thereto is, and shall be, accurate and correct in all respects when furnished.

(c)    None of the Collateral, shall be sold, assigned, transferred, discounted, hypothecated or otherwise subjected to any Lien, encumbrance or security interest, and Debtor shall defend such Collateral and each and every part thereof against all claims of all Persons at any time claiming such Collateral or claiming any interest therein adverse to Secured Party.

(d)    The provisions of this Agreement are sufficient to create in favor of Secured Party a valid and continuing Lien on, and first security interest in, the types of Collateral in which a security interest may be perfected by the filing of UCC Financing Statements, and when such UCC Financing Statements are filed in the appropriate filing offices, and the requisite filing fees are paid, such filings shall be sufficient to perfect such security interests.

Security Agreement
April 2009

(e)     None of the Collateral is or will be attached to real estate in such a manner as to become a fixture under applicable state law.

5.     DEBTOR'S RESPONSIBILITIES.   Debtor covenants with, and warrants to, Secured Party that Debtor shall:

(a)     Furnish to Secured Party, in writing and at Secured Party's request, a current list of all Collateral for the purpose of identifying the Collateral and, further, execute and deliver such supplemental instruments, documents, agreements and chattel paper, in the form of assignments or otherwise, as Secured Party shall require for the purpose of confirming and perfecting, and continuing the perfection of, Secured Party's security interest in any or all of such Collateral or proceeds of Collateral.

(b)     At Debtor's expense and upon request of Secured Party, furnish copies of invoices issued by Debtor in connection with the Collateral, furnish certificates of insurance evidencing insurance on the Collateral, furnish proof of payment of taxes and assessments on the Collateral, make available to Secured Party, any and all of Debtor's books, records, written memoranda, correspondence, purchase orders, invoices and other instruments or writings that in any way evidence or relate to the Collateral.

(c)     Keep the Collateral insured at all times against risks of loss or damage by fire (including so-called extended coverage), theft and such other casualties including collision in the case of any motor vehicle, all in such amounts, under such forms of policies, upon such terms, for such periods and written by such companies or underwriters as is satisfactory to Secured Party.  In all cases losses shall be payable to Secured Party and any surplusage shall be paid to Debtor.  All policies of insurance shall provide for at least thirty (30) days prior written notice of cancellation to Secured Party.  Should Debtor at any time fail to purchase or maintain insurance, pay taxes, or pay for any expense, incident or such insurance, Secured Party may pay such taxes, order and pay for such necessary items of preservation, maintenance or protection, and Debtor agrees to reimburse Secured Party for all expenses incurred under this paragraph.

(d)     Pay all taxes or assessments imposed on or with respect to the Collateral.

(e)     Keep all of the Collateral in good condition and repair, protecting it from weather and other contingencies which might adversely affect it as secured hereunder.

(f)     Notify Secured Party immediately in writing of any information which Debtor has or may receive which might in any way adversely affect the value of the Collateral or the rights of Secured Party with respect thereto.

(g)     Notify Secured Party promptly, in writing, of any change in the legal name of Debtor or of any change in the location of the Collateral or of any place of business or mailing addresses or the establishment of any new place of business or mailing address.

(h)     Upon the occurrence of an Event of Default or breach of any provision of this Agreement, pay all expenses and reasonable Attorneys' Fees of Secured Party; and Debtor agrees that said expenses and fees shall be secured under this Agreement.

(i)     Maintain possession of all Collateral at the location disclosed to Secured Party and not remove the Collateral from that location.

(j)     Not sell, contract to sell, lease, encumber, or otherwise transfer the Collateral until the obligations under the Loan Agreement have been paid and performed, Debtor acknowledging nonetheless that Secured Party has a security interest in the proceeds of such Collateral.

6.     POWER OF ATTORNEY.  Debtor hereby makes, constitutes and appoints Secured Party its true and lawful attorney in fact to act, with full power of substitution, with respect to the Collateral in any transaction, legal proceeding, or other matter in which Secured Party is acting pursuant to this Agreement, including but not limited to executing, authenticating and/or filing on its behalf: (i) UCC Financing Statements reflecting the Lien of Secured Party upon the Collateral and any other documents necessary or desirable to perfect or otherwise continue the security interest granted herein; and (ii) any third party agreements or assignments to grant Secured Party control over the Collateral, including but not limited to third party agreements between Debtor, Secured Party, and depository institutions, securities intermediaries, and issuers of letters of credit or other support obligations, which third party agreements direct the third party to accept direction from Secured Party regarding the maintenance and disposition of the Collateral and the products and proceeds thereof.  The Debtor authorizes Secured Party at any time without

Security Agreement

2

notice to Debtor, to transfer or cause to be transferred into Secured Party's name, or the name of its nominee or nominees, any or all of the Collateral.

7.　　　　UNDERLINE EVENTS OF DEFAULT. Any of the following events shall be an "Event of Default" hereunder:

(a)　　An event of default occurs under the Loan Agreement, as "Event of Default" shall be defined therein;

(b)　　Any representation or warranty of Debtor set forth in this Agreement shall be materially inaccurate or misleading;

(c)　　Debtor shall fail to maintain in force the insurance required in this Agreement;

(d)　　Any sale, conveyance or transfer of any rights in the Collateral, or any destruction, loss or damage of or to the Collateral in any material respect.

8.　　　　REMEDIES. Upon the occurrence and until the waiver, if any, of an Event of Default, Secured Party may, without further notice to Debtor, at Secured Party's option, declare all of the obligations under the Loan Agreement to become due and payable in its aggregate amount; *provided* that the obligations under the Loan Agreement shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code. Secured Party may resort to the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to the right of a secured party to (a) enter any premises of Debtor, with or without legal process and take possession of the Collateral and remove it and any records pertaining thereto and/or remain on such premises and use it for the purpose of collecting, preparing and disposing of the Collateral; (b) ship, reclaim, recover, store, finish, maintain and repair the Collateral; and (c) sell the Collateral at public or private sale. Debtor will be credited with the net proceeds of any such sale only when they are actually received by Secured Party, and any requirement of reasonable notice of any disposition of the Collateral will be satisfied without notice to Debtor if the Collateral is of a type customarily sold on a recognized market or otherwise if such notice is sent to Debtor 7 days prior to such disposition. Debtor will, upon request, assemble the Collateral and any records pertaining thereto and make them available at a place designated by Secured Party. No remedy set forth herein is exclusive of any other available remedy or remedies, but each is cumulative and in addition to every other remedy given under this Agreement, the Loan Agreement, or now or hereafter existing at law or in equity or by statute. Secured Party may proceed to protect and enforce its rights by an action at law, in equity or by any other appropriate proceedings. No failure on the part of Secured Party to enforce any of the rights hereunder shall be deemed a waiver of such rights or of any Event of Default and no waiver of any Event of Default shall be deemed to be a waiver of any subsequent Event of Default.

9.　　　　NO WAIVER. No delay on Secured Party's part in exercising any power of sale, Lien, option or other right with respect to the Collateral, and no notice or demand which may be given to or made upon Debtor by Secured Party with respect to any power of sale, Lien, option or other right with respect to the Collateral, shall constitute a waiver thereof, or limit or impair Secured Party's right to take any action or to exercise any power of sale, Lien option, or any other right with respect to the Collateral without notice or demand, or prejudice Secured Party's rights as against Debtor in any respect. In addition, no action taken by Secured Party with respect to the Collateral shall in any way impair or limit Secured Party's right to exercise any or all rights or remedies Secured Party may otherwise have against Debtor with respect to any obligations under the Loan Agreement or any other indebtedness owing as of any date to Lender. The pledge of, and security interest in, the Collateral by Debtor to Secured Party are absolute, unconditional and continuing and will remain in full force and effect until the obligations under the Loan Agreement have been fully paid and satisfied. The pledge of, and security interest in, the Collateral will extend to and cover renewals of the obligations under the Loan Agreement and any number of extensions of time for payment thereof and will not be affected by any surrender, exchange, acceptance or release by the Secured Party of any other pledge or any security held by it for any of such obligations.

10.　　　　DEFINITIONS. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth for them (with the following order of priority) below, in the Loan Documents or in the applicable version of the Uniform Commercial Code adopted in the State of Ohio. As used herein:

"Equipment" will mean all goods (excluding inventory, farm products or consumer goods, but including, without limitation, each of the items of equipment set forth on any schedule which is either now or in the future attached to Lender's copy of this Agreement), all machinery, machine tools, equipment, fixtures, office equipment, furniture, furnishings, motors, motor vehicles, tools, dies, parts, jigs, and all attachments, accessories, accessions, replacements, substitutions, additions and improvements thereto, all supplies used or useful in connection therewith, and all "Equipment" as same is now or hereinafter defined in the Uniform Commercial Code.

Security Agreement

3

"UCC" or "Uniform Commercial Code" shall mean that version of the Uniform Commercial Code adopted in the State of Ohio.

11.    MISCELLANEOUS PROVISIONS.

(a)    All rights of Secured Party shall inure to the benefit of its successors and assigns and all obligations of Debtor shall bind the heirs, executors, administrators, successors and assigns of Debtor.

(b)    Debtor acknowledges and agrees that, in addition to the security interests granted herein, Secured Party has a banker's Lien and common law right of set-off in and to Debtor's deposits, accounts and credits held by Secured Party and Secured Party may apply or set-off such deposits or other sums against the obligations in the Loan Agreement upon the occurrence of an Event of Default as set forth in this Agreement.

(c)    This Agreement, together with the other Loan Agreement, contains the entire agreement of the parties with respect to the subject matter hereof and no oral agreement whatsoever, whether made contemporaneously herewith or hereafter shall amend, modify or otherwise affect the terms of this Agreement.

(d)    All rights and liabilities hereunder shall be governed and limited by, and construed in accordance with, the laws of the State of Ohio.

(e)    Any provision herein which may prove limited or unenforceable under any law or judicial ruling shall not affect the validity or enforceability of the remainder of this Agreement.

(f)    Debtor hereby further authorizes Secured Party to file UCC Financing Statements on behalf of Debtor and Secured Party with respect to the Collateral.

(g)    This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. Any documents delivered by, or on behalf of, Debtor by facsimile transmission or other electronic delivery of an image file reflecting the execution thereof (i) may be relied on by Secured Party as if the document were a manually signed original and (ii) will be binding on Debtor for all purposes of the Loan Documents.

*[Signature Page Follows]*

Security Agreement

4

0E287 - S21

NOV-21-2013  15:03        312 528 4000                                    P.005

In witness whereof, the parties have executed this Agreement as of the date first appearing above.

**DEBTOR:**

Easy Energy Systems, Inc.

By: _____

Mark Gaalswyk, Chairman

**SECURED PARTY:**

Green Biologics, Inc.

By: _____

Joel A. Stone, President

Security Agreement

SIGNATURE PAGE TO
SECURITY AGREEMENT

0E287 - S22

NOV-21-2013  15:33       312 528 4000                                    P.004

### EXHIBIT OF COLLATERAL LOCATIONS

3810  461 RST  avenue
Emmetsburg, Iowa
50536


102  mill street
welcome, Minnesota
56181

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E287 - S23

**EXHIBIT C**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Filing NO: 201435191963
Filing Date: 2014/01/14
Filing Time: 12:37 PM
State of Minnesota
Processing Office: Secretary of State
Filed by: boono01

A. NAME & PHONE OF CONTACT AT FILER (optional)
Jean D. Boster-Zutezalo, R.E. Paralegal - 614/255-5501

B. E-MAIL CONTACT AT FILER (optional)
jboster@keglerbrown.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Jeremiah Thomas, Esq.
Kegler, Brown, Hill & Ritter Co., L.P.A.
65 East State Street, Suite 1800
Columbus, Ohio 43215

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Easy Energy Systems, Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 102 Mill Street | Welcome | MN | 56181 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Green Biologics, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1130 Gahanna Parkway | Columbus | OH | 43230 | USA |

4. COLLATERAL: This financing statement covers the following collateral
All right, title and interest of Debtor in the following property, whether now existing and hereafter arising or acquired by Debtor, regardless of where it is located, and defined as follows (together with all proceeds and products thereof and all additions and accessions thereto, replacements thereof, supporting obligations therefor, software related thereto, guaranties thereof, insurance or condemnation proceeds thereof, documents related thereto, all sales of accounts constituting a right to payment therefrom, all tort or other claims against third parties arising out of damage thereto or destruction thereof, all property received wholly or partly in trade or exchange therefor, all fixtures attached or appurtenant thereto, all leases thereof, and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition thereof, or any other interest therein. The Collateral shall include all specified Equipment purchased by Debtor with proceeds of any Draw pursuant to the terms of the Loan Agreement, including without limitation, a Cooling Tower, a Gas Heater, and an Evaporator Module.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Minnesota Secretary of State (107712-1)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)          International Association of Commercial Administrators (IACA)

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E287 - S24

# EXHIBIT D

## ALLONGE TO PROMISSORY NOTE

This Allonge to Promissory Note ("Agreement") is made and is effective as of this 29th day of January, 2014 by and between Easy Energy Systems, Inc., a Minnesota corporation, having its principal place of business at 102 Mill Street, Welcome, Minnesota 56181 (the "Maker"), and Green Biologics, Inc., a Delaware corporation having its principal place of business at 1130 Gahanna Parkway, Columbus, Ohio 43230 (the "Holder").

## RECITALS

WHEREAS, Maker delivered its Promissory Note to Holder, dated as of November 21, 2013 (the "Note"), evidencing its agreement to repay advances made thereunder of up to the then face amount of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00). A copy of such Note is attached hereto as **Exhibit A**; and

WHEREAS, it is the intent of the parties to increase the amount of the Credit Commitment;

NOW, THEREFORE, the parties hereto hereby agree as follows:

## AGREEMENT

§1.    **Recitals.** The Recitals are hereby incorporated in and made a part of this Agreement.

§2.    **Capitalized Terms.** Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the Note.

§3.    **Modification of Note.** The Note is hereby amended to increase the amount of the Credit Commitment to a total of Nine Hundred Thousand and 00/100 Dollars ($900,000.00), inclusive of all amounts advanced by Holder pursuant to the Note prior to the date hereof.

§4.    **Allonge.** The parties agree that this Agreement shall be firmly affixed to and become an allonge to the Note.

§5.    **Effect of Modification.** Except as expressly modified herein, all of the terms and conditions of the Note remain as stated therein.

[SIGNATURES APPEAR ON THE NEXT PAGE]

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

IN WITNESS WHEREOF, the parties have caused this Allonge to be executed as of the day and year first set forth above.

HOLDER

GREEN BIOLOGICS, INC.,

By: _Joel A. Stone_

Its: _President_


MAKER:

EASY ENERGY SYSTEMS, INC

By: Mark Gaalswyk

Its: Chairman

0E287 - S26

EXHIBIT A
(See attached Promissory Note)

4614-5922-0375, v. 2

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E207 — 327

**EXHIBIT E**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

Filing NO: 20143709512
Filing Date: 2014/06/27
Filing Time: 9:50 AM
State of Minnesota
Processing Office: Secretary of State
Filed by: boono01

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Jean D. Boster-Zatczalo, R.E. Paralegal - 614/255-5501

**B. E-MAIL CONTACT AT FILER (optional)**
jboster@keglerbrown.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Jeremiah Thomas, Esq.
Kegler, Brown, Hill & Ritter Co., L.P.A.
65 East State Street, Suite 1800
Columbus, Ohio 43215

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
201435191963 - 2014/01/14

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:     AND     Check one of these three boxes to:
☐ This Change affects ☐ Debtor or ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☑ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
Hard Equipment and Infra-structure: 1. Fermenters (3); 2. Beer well; 3. In situ tank; 4. Glycol heater (8MM Btu/hr capacity) installed; 5. Cooling tower; 6. Chiller installed; 7. Air compressor; 8. Grain bins and augers and conveyors; 9. Co-product conveying and collection; 10. CIP system; 11. Evaporator or alternative concentrator installed; 12. Hammer Mill installed; 13. Scale or cover; 14. Cablovy system; 15. Control panels and electrical for MEPS added in 2014; 16. Pipes and plumbing added in 2014; 17. Any other assets required to run the process. RIGHTS TO THE FOLLOWING SERVICES: 1. City water; 2. Natural gas; 3. Electrical; 4. Waste water system.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME   Green Biologics, Inc. | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
Minnesota Secretary of State (107712-1)

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**EXHIBIT F**

### SECOND ALLONGE TO PROMISSORY NOTE

This Second Allonge to Promissory Note ("Second Allonge") is made and is effective as of this First day of November, 2014 (the "Effective Date") by and between Easy Energy Systems, Inc., a Minnesota corporation, having its principal place of business at 102 Mill Street, Welcome, Minnesota 56181 (the "Maker"), and Green Biologics, Inc., a Delaware corporation having its principal place of business at 1130 Gahanna Parkway, Columbus, Ohio 43230 (the "Holder").

### RECITALS

WHEREAS, Maker delivered its Promissory Note to Holder, dated as of November 21, 2013, as amended by that certain Allonge to Promissory Note dated January 29, 2014 (collectively, the "Note"), evidencing its agreement to repay advances made thereunder of up to the amount of Nine Hundred Thousand and 00/100 Dollars ($900,000.00). A copy of such Note is attached hereto as Exhibit A; and

WHEREAS, it is the intent of the parties to modify the repayment terms of the Note;

NOW, THEREFORE, the parties hereto hereby agree as follows:

### AGREEMENT

§1.  **Recitals.**  The Recitals are hereby incorporated in and made a part of this Note.

§2.  **Capitalized Terms.**  Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the Note.

§3.  **Modification of Note.**  The Note is hereby amended to modify the repayment terms to provide that the principal sum of the Note and all accrued and unpaid interest shall be paid as follows:  During calendar year 2015, interest on each Draw Tranche shall be payable monthly, in arrears, commencing on the first day of the month following the Effective Date, and continuing on the first day of each consecutive month thereafter.  Commencing January 1, 2016, interest on each Draw Tranche shall be payable quarterly, in arrears, commencing on the first day of the quarter following the Draw Effective Date, and continuing on the first day of each consecutive quarter thereafter, installments of principal and interest, amortized equally over the remaining time before the Maturity Date, shall be made by Maker to Holder, with all remaining principal and interest on each Draw Tranche being due and payable, in full, on or before the Maturity Date. In lieu of its right to receive all or a portion of each payment, Holder (if a party to the Facilities Usage Agreement) may notify Maker ("Offset Notice") of its intent to exercise its rights under the Facilities Usage Agreement to offset such payments up to the applicable Offset Percentage (as defined below) of accrued Facilities Usage Fees against the outstanding principal and interest due to Holder under this Note (without regard to whether the entire balance offset is then due and payable). In such event, Maker's principal and interest obligations hereunder will be reduced, as if a cash payment has been made in the amount indicated in Holder's Offset Notice. For the avoidance of doubt, Holder's obligations to Maker for Facilities Usage Fees under the Facilities Usage Agreement shall be reduced dollar for dollar by the amount indicated in the Offset Notice as well.

§4.  **Allonge.**  The parties agree that this Second Allonge shall be firmly affixed to and become an allonge to the Note.

§5.  **Effect of Modification.**  Except as expressly modified herein, all of the terms and conditions of the Note remain as stated therein.  Each reference to the Note itself shall be deemed also to refer to this Second Allonge.

[SIGNATURES APPEAR ON THE NEXT PAGE]

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E287 - S29

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

IN WITNESS WHEREOF, the parties have caused the Second Allonge to be executed as of the day and year first set forth above.

HOLDER

GREEN BIOLOGICS INC

By

Its: President

MAKER:

EASY ENERGY SYSTEMS INC

By: Mark Gustowyk

Its: Chairman

Page 3 of 3

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Aug 17 1:35 PM-18CV007046

0E287 - S31

**EXHIBIT A**
[See attached Promissory Note]

EXHIBIT G



January 19, 2017

## NOTICE OF DEFAULT AND ACCELERATION

Easy Energy Systems, Inc.            *Via Certified Mail, Postage Prepaid, Return Receipt Requested*
102 Mill Street
Welcome, Minnesota 56181
Attention: Mark Gaalswyk, Chairman

RE:     Promissory Note

Dear Mr. Gaalswyk:

Please be advised that Easy Energy Systems, Inc. ("EES") is currently in default of its obligations under that certain Promissory Note dated November 21, 2013, as modified by that certain Allonge to Promissory Note dated January 29, 2014, and that certain Second Allonge to Promissory Note dated November 1, 2014 (as modified, the "Note").

This letter shall serve as notice of default by EES, and declaration by Green Biologics, Inc. of acceleration of the Note. The Note is immediately due and payable, including all principal balances plus all unpaid interest and other charges. As of the date of this letter, the unpaid balance of the Note including interest and other charges is $862,347.95.

This notice is not an election of remedies by GBI, and GBI reserves all legal and contractual rights.

Sincerely,
**GREEN BIOLOGICS, INC.**

By: 

Dana Persson, President, Green Biologics, Inc.

Green Biologics Inc.
10338 Stony Run Lane, Ashland, VA US
T: +1 (804) 368-6136  F: +1 (804) 368-8613  E: info@greenbiologics.com

