IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Green Biologics, Inc.,

    Plaintiff,                                Case No: 2:18-cv-1121

    v.                                         Judge Graham

Easy Energy Systems, Inc.,

    Defendant.

Opinion and Order

Plaintiff Green Biologics, Inc., a Delaware corporation doing business in Franklin County, Ohio, brings this action for breach of a loan agreement against defendant Easy Energy System, Inc., a Minnesota corporation with its principal place of business in Minnesota. Both Green Biologics and Easy Energy are in the "green energy" industry. Green Biologics develops biobutanol products and Easy Energy develops and manufactures ethanol-based products.

This matter is before the Court on Easy Energy's motion to compel alternative dispute resolution in compliance with the parties' Facilities Usage Agreement. For the reasons that follow, the motion is granted.

**I.    Background**

In March 2013, Green Biologics and Easy Energy entered into the Facilities Usage Agreement. Green Biologics agreed to pay facilities usage fees to Easy Energy for the use of East Energy's ethanol production facility in Iowa. In turn, Easy Energy agreed to provide, among other things, the labor, ethanol equipment and necessary utilities to produce licensed products for Green Biologics.

The Facilities Usage Agreement contains an Alternative Dispute Resolution clause mandating that the parties first send any dispute or claim "arising out of" the Agreement to mediation under the Commercial Mediation Rules of the American Arbitration Association, and then, if the dispute cannot be settled by mediation, to binding arbitration administered by the AAA. *See* Facilities Usage Agr., Article XXIII.

The Agreement also contains a financing provision, which appears in a section entitled "Conditions Precedent." One condition precedent was Easy Energy's receipt of financing to perform

its obligations under the Agreement. *Id.*, Art. I(B). If Easy Energy were unable to secure sufficient financing, Green Biologics was given the option of extending a loan to Easy Energy: "Should EES have no option available . . . GBI shall have the right to make such contribution itself as a loan to EES." *Id.* The Agreement provided that any loan would be secured against the equipment or assets purchased by Easy Energy with the loan proceeds to perform its obligations under the Agreement. It further provided that any loan agreement would contain certain amortization, repayment and setoff terms:

> GBI shall structure the terms of such loan in its sole discretion, and such terms would not be less favorable to EES than arm's length, commercially reasonable terms available to EES from a disinterested third-party lender, provided that the term and payment terms of any such loan shall be as follows: any amounts loaned to EES by GBI shall be amortized over the remaining term of this agreement immediately following the receipt of such loan by EES; and all payments shall be due quarterly on the first of day of each quarter as designated by GBI but in no event shall such setoff payment exceed 50% of the payments due to EES from GBI for Facilities Usage Fees. If upon termination of the agreement, there is still an outstanding balance on the loan, this remaining amount shall be paid in full within 1 year of termination. In the event that any such loan is made prior to Facility Completion, EES's payment obligation shall be suspended until Facility Completion, and the applicable amortization period shall commence immediately following Facility Completion. GBI shall have the right to set-off any amounts due GBI under such loan, against any amounts owed to EES under this Agreement or any other agreements between the Parties. Upon full payment of the loan, GBI shall release any liens on the equipment secured by the loan.

*Id.*, Art. I(B).

On November 21, 2013, Easy Energy executed and delivered to Green Biologics a Promissory Note for the principal amount of $150,000. The Promissory Note states that it was executed "in accordance with that certain Facilities Usage Agreement by and between the parties." *See* Promissory Note, preamble. The Note contains terms regarding an amortization period, payment schedule and limitation on the right to setoff that complies with the terms of the Facilities Usage Agreement recited above. *See id.*, ¶¶ 1, 4. The Note further provides that Easy Energy will use the loan proceeds "solely and exclusively for the purchase [of equipment] to meet its obligations set out in Schedule V of the Facilities Usage Agreement." *Id.*, ¶ 12.

Also on November 21, 2013, Easy Energy executed a Security Agreement granting Green Biologics a security interest in a cooling tower, gas heater and evaporator module. Between January 2014 and November 2014, Easy Energy executed and delivered to Green Biologics a first allonge, followed by a second allonge to the promissory note, increasing the principal loan amount to $900,000.

2

Additional equipment and infrastructure were included as collateral to secure the increased loan amount.

In August 2018, Green Biologics filed a complaint against Easy Energy in the Franklin County Court of Common Pleas alleging that Easy Energy is in default for failure to make payments in accordance with the terms of the Promissory Note, the first allonge, and the second allonge (collectively, the "Loan"). Easy Energy removed the case to this Court on September 26, 2018 on the basis of diversity of citizenship between the parties and the amount in controversy exceeding $75,000. 28 U.S.C. § 1332.

In its motion to compel, Easy Energy argues that Green Biologics' claims must be dismissed or stayed pursuant to the Federal Arbitration Act because they are subject to the ADR clause of the Facilities Usage Agreement.

## II. Standard of Review

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a cause of action is determined to be covered by arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960) (footnote omitted).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984)). Even so, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to arbitration clauses. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987). "'The federal policy favoring arbitration, however, is taken into consideration even in applying

ordinary state law.'" *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005) (internal quotation marks omitted).

**III.     Discussion**

In determining whether to compel arbitration, a court must first determine whether the parties agreed to arbitrate. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). If they did, the court must determine the scope of their agreement. *Id.* "[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Id.*

It is undisputed that the Facilities Usage Agreement between Green Biologics and Easy Energy is a valid and enforceable contract. Further, there is no dispute that the Agreement contains the ADR clause which Easy Energy now seeks to enforce. The issue on which the parties disagree is the scope of the ADR clause and whether it extends to Green Biologics' claim that Easy Energy defaulted on the Loan.

> The ADR clause provides:
>
> Any dispute, controversy or claim arising out of this Agreement, or the breach thereof, that cannot be settled through negotiation shall be settled (a) first, by the parties trying in good faith to settle the dispute by mediation under the Commercial Mediation Rules of the American Arbitration Association ('AAA') . . . and (b) if the dispute, controversy or claim cannot be settled by mediation, then by binding arbitration administered by the AAA . . . .

Facilities Usage Agr., Art. XXIII.

In Easy Energy's view, Green Biologics' claim arises out of the Facilities Usage Agreement because the Agreement's financing provision contemplated that the parties could enter into a loan arrangement and the provision set forth certain terms a loan would have to contain. In response, Green Biologics contends that the Loan is an independent agreement with its own terms. Green Biologics argues that the Agreement afforded it the right to structure many terms of the Loan and that the parties chose not to make an ADR provision one of its terms.

To determine whether a dispute is within the scope of an arbitration clause, the Court must analyze whether "the action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone.*, 460 U.S. at 24–25.

4

The Court finds that the action for breach of the Loan cannot be maintained without reference to the Facilities Usage Agreement. The Agreement not only reflects that the parties expressly contemplated the potential need for a financing arrangement, it mandated what many of the material terms would be: the use of loan proceeds, the type of collateral, the amortization period, the repayment schedule and the right to setoff. And the Agreement tied the loan terms directly to the Agreement. Loan proceeds would be used to meet Easy Energy's obligations under the Agreement. The loan would be secured against assets purchased by Easy Energy to perform the Agreement. The amortization period would match the remaining term of the Agreement. The right of Green Biologics to setoff under a loan would be restricted to 50% of the amount of facilities usage fees that it owed to Easy Energy under the Agreement.

According to the complaint, Easy Energy breached the Loan by its "failure to make payments in accordance with the terms of the Loan." Compl., ¶ 11. The Loan's repayment terms were established in part by the Facilities Usage Agreement. The complaint further seeks enforcement of Green Biologics' security interest. The type of collateral in which Green Biologics has an alleged security interest again was controlled by the Facilities Usage Agreement.

The Promissory Note, which is attached to the complaint, makes numerous references to the Facilities Usage Agreement. It states that the parties were executing the Note "in accordance with that certain Facilities Usage Agreement." The repayment and setoff terms refer specifically to terms in the Facilities Usage Agreement. The "Use of Proceeds" provision was made "subject to" the "terms of the Facilities Usage Agreement" and requires that proceeds be used solely for the purchase of equipment needed by Easy Energy to perform its obligations under the Agreement.

It is true, as Green Biologics emphasizes, that the Agreement did not expressly require the Note to contain an ADR clause, nor did the Note expressly incorporate all terms of the Agreement. However, the test of the scope of the ADR clause is whether the present action for default on the Note can be maintained without reference to the Facilities Usage Agreement. The Note's own "Remedies on Default" provision – which Green Biologics is seeking to enforce – makes direct references to the Agreement. It allows Green Biologics to: declare "the Note and all other obligations hereunder and under the Facilities Usage Agreement or under the Security Agreement immediately due and payable"; to "exercise all rights and remedies provided under the Facilities Usage Agreement and Note"; and to "set off" and to "enforce the liens and security interests granted" to Green Biologics. *See* Promissory Note, ¶ 9.

5

The Facilities Usage Agreement and Loan thus are closely intertwined. The parties, when they executed the Agreement, clearly anticipated the possible need to enter into a financing arrangement, which they did. The sole purpose of the Note was to enable Easy Energy to perform the Agreement and allow the parties to continue their business relationship. The Note was executed "in accordance with" and subject to the Facilities Usage Agreement. The parties agreed to mediate and arbitrate any dispute "arising out of" the Agreement, and the Court finds that the scope of the ADR clause covers Green Biologics' claim against Easy Energy.

For its part, Easy Energy's motion advises that it anticipates asserting counterclaims against Green Biologics for breach of the Facilities Usage Agreement. The alleged breaches include failure to pay facilities usage fees, improperly removing equipment from the Easy Energy facility in Iowa and interfering with Easy Energy's relationship with another tenant of the facility. The Court finds that these claims, along with Green Biologics' claim for default, should be consolidated in the ADR process.

### IV. Conclusion

Accordingly, Easy Energy's motion to compel alternative dispute resolution (doc. 9) is GRANTED. The Court will stay, rather than dismiss, this action pending completion of the ADR process. *See* 9 U.S.C. § 3. The parties shall file a joint status report within 30 days of the completion of mediation and, if the matter proceeds to arbitration, they shall file a joint status report within 30 days of the completion of arbitration.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 9, 2019